## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BARBARA STERBCOW and KAREN BENTO, Derivatively on Behalf of Nominal Defendant GENERAC HOLDINGS INC., | Case No. 2:23-cv-302 |
| Plaintiffs, | **VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT** |
| v. | |
| AARON JAGDFELD, YORK A. RAGEN, MARCIA J. AVEDON, JOHN BOWLIN, ROBERT D. NIXON, ANDREW G. LAMPEREUR, BENNETT MORGAN, NAM T. NGUYEN, DAVID A. RAMON, KATHRYN ROEDEL, and DOMINICK ZARCONE, | |
| Defendants, | |
| and | |
| GENERAC HOLDINGS INC., | |
| Nominal Defendant. | |

Plaintiffs Barbara Sterbcow and Karen Bento (together, "Plaintiffs"), by and through their undersigned attorneys, bring this derivative complaint for the benefit of nominal defendant, Generac Holdings Inc. ("Generac" or the "Company"), against certain members of its Board of Directors (the "Board") and certain executive officers seeking to remedy certain defendants' breaches of fiduciary duties and contribution for violations of Sections 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiffs' allegations are based upon their personal knowledge as to each of themselves and their own acts, and upon information and belief, developed from the investigation and analysis by Plaintiffs' counsel, including a review of publicly available information, including filings by Generac with the U.S. Securities and Exchange Commission

1

("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, such as *Power Home Solar, LLC v. Generac Power Systems, Inc.*, Case No. 6:22-cv-00043 (W.D. Va.) (the "Pink Energy Lawsuit"), and matters of public record.

## I.    NATURE AND SUMMARY OF THE ACTION

1.    Generac is a leading producer of primary and backup generator systems.  The Company also develops a line of products under the brand name PWRcell that manage and store electricity generated by solar panels.  The SnapRS is a component of these solar energy systems that executes a critical safety function, rapidly shutting down the power from solar power systems in certain dangerous situations where voltage is at or reaching a hazardous level.

2.    Unbeknownst to stockholders, the SnapRS component would overheat, melt, and, in some instances, cause fires.  Rather than issue a recall for the faulty SnapRS components, the Individual Defendants (defined below) quietly made "updates" to the existing model and applicable firmware.  Even after these "updates" patently failed, defendants continued to cause the Company to mislead investors and analysts about its business by failing to disclose the defective component and understating the financial costs for the defective products.

3.    Generac primarily relied on "channel partners" to sell, install, and maintain its solar battery storage systems, including Power Home Solar, LLC d/b/a Pink Energy ("Pink Energy") and Valley Solar.  Though the Individual Defendants claimed that the Company did not depend on the business of any single channel partner and that no single customer or partner accounted for more than 6% of its net sales, Generac was heavily reliant on Pink Energy, which sold PWRcell and other products for the Company.

4.    The truth began to emerge on August 1, 2022 when the Pink Energy Lawsuit was filed, revealing that the SnapRS component was defective and that the Company failed to implement an effective solution.  As a result, Pink Energy lost $155 million in revenue and was

2

forced to replace 50,000 units. These substantial costs led Pink Energy to declare bankruptcy on October 7, 2022. On this news, the Company's stock price fell approximately 8.5% to close at $154.26 per share on October 7, 2022, on unusually heavy trading volume.

5.      On October 19, 2022, shortly following Pink Energy's declaration of bankruptcy, Generac reported that it had taken "pre-tax charges totaling approximately $55 million, including approximately $37 million of clean energy product warranty-related matters and approximately $18 million of bad debt expense related to a clean energy product customer that has filed for bankruptcy." The $37 million reflects liability relating to the defective SnapRS components. The $18 million reflects receivables that were owed by Pink Energy that would not be paid. On this news, the Company's stock price fell approximately 25% to close at $110.30 per share on October 19, 2022, on unusually heavy trading volume.

6.      On November 2, 2022, Generac lowered its fiscal 2022 sales guidance for its clean energy products and services by approximately 40% (i.e., from $500 million to between $300 and $330 million), which was a direct result of "the loss of a major customer during the quarter, along with the specific warranty-related issue." On this news, the Company's stock price fell approximately 8% to close at $105.70 per share on November 2, 2022, on unusually heavy trading volume.

7.      These revelations precipitated the filing of a securities class action in this District against Generac and certain of the defendants named herein, captioned *Oakland Cnty. Voluntary Emps'. Beneficiary Assoc. v. Generac Holdings Inc., et al.*, Case No. 2:22-cv-1436-BHL (the "Securities Class Action").

8.     Plaintiffs did not make a litigation demand prior to filing this action because such action would have been futile based upon the composition of the Board and the actions taken by the Board, as alleged herein.

## II.     JURISDICTION AND VENUE

9.     This Court has original jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332.  Subject matter jurisdiction is proper because the amount in controversy exceeds $75,000, exclusive of interest and cost, and the named Plaintiffs and Defendants are citizens of different states.

10.     This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

11.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

## III.     PARTIES

**Plaintiff**

12.     Plaintiff Barbara Sterbcow purchased shares of Generac stock in August 2017 and has continuously owned Generac stock since that date.  She currently owns 82 shares.  She is a citizen of Louisiana.

13.     Plaintiff Karen Bento purchased shares of Generac stock in July 2021 and has continuously owned Generac stock since that date.  She currently owns 32 shares.  She is a citizen of Massachusetts.

**Nominal Defendant**

14.     Nominal Defendant Generac is a Delaware corporation with principal executive offices located at S45 W29290 Hwy 59, Waukesha, Wisconsin 53189.  The Company's common stock trades on the NYSE under the ticker symbol "GNRC."  The Company is a citizen of Delaware and Wisconsin.

**Defendants**

15.     Defendant Aaron Jagdfeld ("Jagdfeld") has served as a director of the Company since November 2006, as the Company's Chief Executive Officer ("CEO") since September 2008, and as Chairman of the Board since February 2016.  Jagdfeld is named as a defendant in the Securities Class Action.  Jagdfeld is a citizen of Wisconsin.

16.     Defendant York A. Ragen ("Ragen") has served as the Chief Financial Officer ("CFO") of the Company since September 2008.  Ragen is named as a defendant in the Securities Class Action.  Ragen is a citizen of Wisconsin.

17.     Defendant Marcia J. Avedon ("Avedon") has served as a director of Generac since December 2019.  Avedon is a citizen of North Carolina.

18.     Defendant John Bowlin ("Bowlin") has served as a director of Generac since December 2006.  Bowlin is a citizen of Florida.

19.     Defendant Robert D. Dixon ("Dixon") has served as a director of Generac since March 2012.  Dixon serves as a member on the Company's Audit Committee.  Dixon is a citizen of Pennsylvania.

20.     Defendant William Jenkins ("Jenkins") has served as a director of Generac since March 2017.  Jenkins is a citizen of California.

21.     Defendant Andrew G. Lampereur ("Lampereur") has served as a director of Generac since March 2014.  Lampereur serves as the Chairperson of the Company's Audit Committee.  Lampereur is a citizen of Wisconsin.

22.     Defendant Bennett Morgan ("Morgan") has served as a director of Generac since November 2013.  Morgan was elected as the Lead Director in February 2018 and has served in that capacity since then.  Morgan is a citizen of Minnesota.

23.     Defendant Nam T. Nguyen ("Nguyen") has served as a director of Generac since March 2022.  Nguyen is a citizen of California.

24.     Defendant David A. Ramon ("Ramon") has served as a director of Generac since April 2010.  Ramon serves as a member on the Company's Audit Committee.  Ramon is a citizen of Georgia.

25.     Defendant Kathryn Roedel ("Roedel") has served as a director of Generac since December 2016.  Roedel serves as a member on the Company's Audit Committee.  Roedel is a citizen of Minnesota.

26.     Defendant Dominick Zarcone ("Zarcone") has served as a director of Generac since January 2017.  Zarcone serves as a member on the Company's Audit Committee.  Zarcone is a citizen of Wisconsin.

27.     Defendants Dixon, Lampereur, Ramon, Roedel and Zarcone are sometimes referred to hereinafter as the "Audit Committee Defendants."

28.     Defendants Jagdfeld, Ragen, Avedon, Bowlin, Dixon, Jenkins, Lampereur, Morgan, Nguyen, Ramon, Roedel, and Zarcone are sometimes referred to hereinafter as the "Individual Defendants."

6

## IV. DUTIES OF THE INDIVIDUAL DEFENDANTS

### A. Fiduciary Duties

29. By reason of their positions as officers, directors, and/or fiduciaries of the Company, and because of their ability to control the business and corporate affairs of the Company, at all relevant times, the Individual Defendants owed the Company and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were required to act in furtherance of the best interests of Generac and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Generac and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

30. The Individual Defendants, because of their positions of control and authority as directors and/or officers of Generac, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Generac, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

31. To discharge their duties, the officers and directors of Generac were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company. By virtue of such duties, the officers and directors of Generac were required to, among other things, do the following:

        (a)    Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b)     Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c)     Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

(d)     When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## B.     Audit Committee Duties and Responsibilities

32.     According to the Audit Committee Charter, the Audit Committee Defendants were responsible for overseeing, among other things, the following:[1]

(i) ***management's conduct of, and the integrity of, the Company's financial reporting to any governmental or regulatory body, shareholders, other users of Company financial reports and the public;*** (ii) ***the Company's systems of internal control over financial reporting and disclosure controls and procedures***; (iii) the qualifications, engagement, compensation, independence and performance of the registered public accounting firm that shall audit the annual financial statements of the Company (the "independent auditor") and any other registered public accounting firm engaged to prepare or issue an audit report or to perform other audit, review or attest services for the Company, their conduct of the annual audit of the Company's financial statements and any other audit, review or attestation engagement, and their engagement to provide any other services; (iv) ***the Company's legal and regulatory compliance***; (v) the application of the Company's related person transaction policy as established by the Board; and (vi) the application of the Company's codes of business conduct and ethics as established by management and the Board.

33.     Specifically, with respect to legal compliance, the Audit Committee Charter provides that the committee must:

review periodically with a member of the Legal Department or outside legal counsel: (i) legal and regulatory matters that may have a material impact on the Company's financial statements, including any material impact on the Company's financial statements, including any material reserves for legal contingencies and

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

any related financial statement disclosure, and (ii) the scope and effectiveness of the Company's legal and regulatory compliance policies and programs;

34.     The Audit Committee is also tasked with assessing financial risk exposure, which includes the financial impact of any product defect.  Specifically, the Audit Committee Defendants must:

> Review and discuss with management and the independent auditor *any major financial risk exposures and assess the steps and processes management has implemented to monitor and control such exposures*, and assist the Board in fulfilling its oversight responsibilities regarding the Company's policies and guidelines with respect to risk assessment and risk management, including any significant non-financial risk exposures;

## V.     SUBSTANTIVE ALLEGATIONS

### A.     Background

35.     Generac specializes in providing backup and prime power generation systems for residential and commercial & industrial ("C&I") applications.  Additionally, the Company provides energy management devices and controls, advanced power grid software platforms & services, and engine- and battery-powered tools and equipment.

36.     The Company classifies its products into three categories: Residential products; C&I products; and Other products and services.  Residential products include automatic standby and home standby generators, clean energy products, home monitoring solutions, and outdoor power equipment.  Residential products comprise 65.8% of sales in fiscal 2021 and 62.6% of sales in fiscal 2020.

37.     After acquiring Pika Energy in 2019, Generac developed a line of clean energy products under the brand name PWRcell, including batteries, an inverter, photovoltaic optimizers, power electronic components.  Together, these products manage and store solar-panel-generated electricity.  The Company advertised the PWRcell as a cost-saving device that stores solar energy for use during high-demand hours when traditional electricity costs are greater.

9

38.     State law mandates that solar power management systems like the PWRcell contain shutdown switches that rapidly isolate solar panels that have exceeded actually and lawfully safe operation voltage levels.  Specifically, the National Electric Code ("NEC"), codified in some form by 46 states, requires, under Section 690.12, that solar panel systems include rapid shutdown components.  Additionally, the Occupational Safety and Health Administration agency ("OSHA") requires all photovoltaic systems (also referred to as PV systems and solar power systems) used in the workplace to be compliant with Underwriters Laboratories ("UL") standard 1741.  UL standard 1741 is "a product safety standard that lays out the manufacturing (including software) and product testing requirements with the goal of producing inverters more capable of riding through grid excursions or even actively managing grid reliability functions."

39.     As part of its line of solar energy system components, Generac provides to its customers an inline disconnect device called the SnapRS that is designed to rapidly shutdown power to individual solar panels to protect against common electrical failures such as short circuits and power surges.  Generac promoted its SnapRS device to be compliant with both NEC Section 690.12 and UL standard 1741.

40.     Generac's residential products are primarily sold through independent residential dealers, which then sell or rent products to the end consumer.  Unbeknownst to stockholders, Generac relied significantly on one of its residential dealers, Power Home Solar, LLC d/b/a Pink Energy ("Pink Energy").

**B.     Unbeknownst to Stockholders, SnapRS is Defective And Poses A Significant Financial Risk to Generac**

**1.     SnapRS Suffers From Overheating, Which Caused Fires**

41.     SnapRS units are subject to overheating and exhibits clear signs of heat deformation, charring, and melting.

42.     Though engineered to be a system failsafe for PWRcell, this defect in the SnapRS component led to fires.

      (a) During early August 2021, the first known residential fire occurred in a home with a PWRcell system.  This fire was determined to have been caused by an overheating SnapRS component.

      (b) On August 18, 2021, another residential fire took place at the home with a PWRcell system.  The cause of this fire was determined to be a heat deformed and/or exploded SnapRS component.

      **2.     Generac is Put on Notice that the SnapRS Component is Defective and Covertly Develops Solutions**

43.     By April 2021, Pink Energy communicated to Generac that it discovered defective SnapRS components during service calls.  In addition to providing notice of the defects, Pink Energy provided Generac with photographs of the defective components.  As a result of the defects, the SnapRS component would overheat and burn out, causing system failures and creating safety hazards.

44.     By early August 2021, Generac became aware that other channel partners experienced similar failures of their SnapRS components during service calls.  For example, the President of Valley Solar, another Generac product installer, informed Pink Energy that it was seeing a "very high rate with SnapRS failing and needing replacement" and that the SnapRS components were demonstrating signs of "heat deformation and even charring."  Valley Solar communicated that it had informed Generac of these issues, but they had "not gotten much of a response."

45.     During a conference call on August 12, 2021, Generac's Vice President of Engineering, Uwe Uhmeyer, informed Pink Energy that the Company was investigating the cause

of the overheating SnapRS component and the fire.  Generac disclosed that it was in the process of developing and testing an "update" to the SnapRS component (later introduced as the "SnapRS801A") as a means of addressing the overheating issue.  Generac did not publicly acknowledge the SnapRS component issue or that it was developing the new SnapRS model to attempt to rectify the issue.

46.     On August 19, 2021, Generac's Director of Sales for its East Region, Jeffrey McAndrew ("McAndrew") told Pink Energy, via email, that the Company discovered that "a few SnapRS units were found to be overactive."  McAndrew expressed that the Company was testing new firmware that had the "ability to remotely identify defective SnapRS units that were in danger of overheating and which presented fire hazards for PHS [(i.e., Pink Energy)] customers with systems utilizing SnapRS units."  Additionally, the firmware would address the overactivity (i.e., the units were repeatedly turning on and off) issue "by keeping the signal constant (in the "on" position) until there is a forced rapid shutdown.  Generac planned to release it by late August 2021.

### 3.     A Firmware Update And Updated Component Do Not Resolve the Overheating Issue

47.     Despite repeat assurances from Generac that the SnapRS801A and updated firmware would alleviate the overheating issues that plagued the SnapRS component, Pink Energy did not experience any reduction in customer-reported incidents after replacing the components with the SnapRS801A.  Pink Energy continued to see the same defects that afflicted the original SnapRS model (the "SnapRS801") also affect the SnapRS801A.

48.     Starting in late 2021, service calls to channel partners to address defective SnapRS units grew exponentially.   Pink Energy calculated that the SnapRS defect caused "an approximately 3,650% increase in customer service calls" during the period between late 2021 and

early 2022. Also, Pink Energy expressed that Generac was unable to readily supply enough replacement SnapRS components to match the volume of defective SnapRS components.

49. This exponential growth in service calls coincided with Generac's release of its firmware update. Those customers with firmware-updated SnapRS units were experiencing decreased productions in energy output and, in many cases, total shutdowns of their solar power systems. These issues were registered by the SnapRS component as "PVRSS Lockout" system errors. To clear PVRSS Lockout system errors, channel partners, such as Pink Energy, were required to replace the defective SnapRS units.

50. Also in late 2021, Generac began supplying Pink Energy with the SnapRS801A. Initially, the Company instructed Pink Energy to replace only the heat-deformed SnapRS components. Even after replacing the defective original SnapRS units (i.e., the "SnapRS801) with the SnapRS801A, Pink Energy did not experience a reduction in service trips relating to issues with SnapRS components, such as PVRSS Lockouts.

51. By Spring 2022, Pink Energy had still been facing the same safety issues with customers' SnapRS components. As a result, Pink Energy reached out to the Company to determine whether a report had been filed with the Consumer Product Safety Commission ("CPSC") and if the Company had issued a recall of the SnapRS components. The Company claimed to have submitted a report to the CPSC, but refused to provide a copy to Pink Energy, and represented that a product recall was unnecessary.

52. On May 23, 2022, after substantial effort made by Pink Energy to encourage Generac to acknowledge the SnapRS-related issues through a letter to Pink Energy customers, the Company decided to do so. However, the Company refused to send a letter to all Pink Energy customers that had dealt with SnapRS-related issues. Instead, the Company selected only certain

Pink Energy customers to disclose widespread issues concerning their SnapRS units. Defendant Jagdfeld has since conceded that Generac should have been more upfront with Pink Energy's customers.

53. As recently as the Summer of 2022, the Company admitted to Pink Energy that SnapRS components have seen close to a 50% failure rate. During that summer, Generac's channel partners, such as Pink Energy and Valley Solar, carried out mass replacements of dangerous and defective SnapRS801 and SnapRS801A components.

54. In July 2022, Generac disclosed to Pink Energy that a significant number of their customers never received the firmware update that it issued in late 2021 because their PWRcell systems were not connected to the internet.

55. That July 2022 disclosure was the first time that Pink Energy was informed that their customers using Generac products had not received the firmware update and were therefore still susceptible to those potential safety risks. All the while, the Company had reason to know that a large number of Pink Energy's customers, as well as potentially other channel partner customers that use solar power systems that rely on SnapRS inverters, did not receive their firmware update. Specifically, channel partners have access to a PWRfleet online dashboard that provides "granular insight into all of your installed PWRcell systems." This operational data was therefore also available to Generac.

### 4. Generac Was Likely to Incur Significant Expenses In Connection with the SnapRS Product Defect

56. In December 2021, Generac and Pink Energy entered into an agreement whereby Generac agreed to certain indemnification obligations (the "Indemnification Agreement") among other things. The agreement required the Company to indemnify Pink Energy for warranty expenses related to product defects. The agreement's application was broad in scope: it applied

not only to products after the date of the agreement but also retroactively to any defects in previously sold SnapRS units, including issues in previously sold SnapRS units that did not develop until after the effective date of the agreement.

57.     Pursuant to generally accepted accounting principles ("GAAP"), codified as ASC 460, Generac must accrue an expense that reflects the cost of warranty liability as soon as it becomes "probable" (i.e., more likely than not) and "estimable."  Even if the cost could not be accurately estimated, GAAP required Generac to disclose its increased warranty liability once the Company learned of the substantial SnapRS issues.

58.     By the time the Indemnification Agreement was executed, Generac had already been put on notice multiple times concerning issues relating to SnapRS product defects.  Thus, Generac was required to record warranty liabilities related to SnapRS, or at least disclose that an increased liability was necessary due to known product defects.

## C.     The Individual Defendants Cause the Company to Issue Materially Misleading Statements Concerning Customer Concentration and Warranty Liability Exposure

59.     On February 23, 2021, the Individual Defendants caused Generac to file its annual financial report with the SEC for the period ended December 31, 2020 (the "2020 Annual Report"). The 2020 Annual Report was signed by defendants Jagdfeld, Ragen, Morgan, Avedon, Bowlin, Dixon, Jenkins, Lampereur, Ramon, Roedel, and Zarcone.  Pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), attached to the 2020 Annual Report were certifications certifying that the financial statements and other financial information included in the report fairly present in all material respects the financial condition, results of operations and cash flows of the Company for the 2020 reporting period.  These certifications were signed by defendants Jagdfeld and Ragen.

60.     According to the 2020 Annual Report, Generac was not substantially dependent on any one of its channel partners.  It stated, in relevant part:

We are not dependent on any one channel or customer for our net sales, ***with no single customer representing more than 6% of our sales***, and our top ten customers representing less than 24% of our net sales for the year ended December 31, 2020.

61.    On April 29, 2021, the Company led a conference call to discuss Generac's first quarter financials for 2021.  On that call, Defendant Jagdfeld spoke about the substantial number of channel partners that Generac had connected with to sell, install and service its products. Specifically, Defendant Jagdfeld expressed that, by the end of that quarter, the Company had certified and trained "approximately 2,000 dealers" and registered "approximately 800 dealers" on the Company's software platform called PowerPlay CE that connects end-consumers interested in Generac clean energy products to Company channel partners that sell and install those products.

62.    On July 28, 2021, the Company issued a press release entitled "Generac Reports Record Second Quarter 2021 Results."  The Company highlighted "very strong growth" of PWRcell system sales as demand for the solar power product "continues to increase."  During the Company's second quarter earnings call held that same day, Defendant Jagdfeld expressed that the Company had now certified and trained "approximately 2,200 dealers" and registered "nearly 900 of those dealers" on their PowerPlay CE system.

63.    On November 4, 2021, the Individual Defendants caused Generac to file its quarterly financial report with the SEC for the period ended September 30, 2021 (the "3Q21 Report").  In the 3Q21 Report, the Company reported an increase in preexisting warranty reserves of approximately $1 million.  It stated, in relevant part:

**Product Warranty Obligations**

The Company records a liability for standard product warranty obligations accounted for as assurance warranties at the time of sale of the product to a customer based upon historical warranty experience. The Company also records a liability for specific warranty matters when they become known and are reasonably estimable.

64.     Pursuant to SOX, attached to the 3Q21 Report were certifications certifying that the financial statements and other financial information included in the report fairly present, in all material respects, the financial condition, results of operations and cash flows of the Company for the third quarter of 2021 reporting period.  These certifications were signed by defendants Jagdfeld and Ragen.

65.     On February 22, 2022, the Individual Defendants caused Generac to file its annual financial report with the SEC for the period ended December 31, 2021 (the "2021 Annual Report").  The 2021 Annual Report was signed by defendants Jagdfeld, Ragen, Morgan, Avedon, Bowlin, Dixon, Jenkins, Lampereur, Ramon, Roedel, and Zarcone.  Pursuant to SOX, attached to the 2021 Annual Report were certifications certifying that the financial statements and other financial information included in the report fairly present, in all material respects, the financial condition, results of operations and cash flows of the Company for the 2021 reporting period.   These certifications were signed by defendants Jagdfeld and Ragen.

66.     According to the 2021 Annual Report, Generac was not substantially dependent on any one of its channel partners.  It stated, in relevant part, the following:

> *We are not dependent on any one channel or customer for our net sales*, *with no single customer representing more than 6% of our sales*, and our top ten customers representing less than 23% of our net sales for the year ended December 31, 2021.

67.     Additionally, in the 2021 Annual Report, the Company reported an increase in preexisting warranty reserves of approximately $4.46 million and left its product warranty obligations disclosure untouched.  It stated, in relevant part:

**Product Warranty Obligations**

The Company records a liability for standard product warranty obligations accounted for as assurance warranties at the time of sale of the product to a customer based upon historical warranty experience. The Company also records a

liability for specific warranty matters when they become known and are reasonably estimable.

68.    On May 9, 2022, the Individual Defendants caused Generac to file its quarterly financial report with the SEC for the period ended March 31, 2022 (the "1Q22 Report"). In the 1Q22 Report, the Company reported a decrease in preexisting warranty reserves of approximately $1.1 million and left its product warranty obligations disclosure untouched. Pursuant to SOX, attached to the 2Q22 Report were certifications certifying that the financial statements and other financial information included in the report fairly present, in all material respects, the financial condition, results of operations and cash flows of the Company for the second quarter of 2022. These certifications were signed by defendants Jagdfeld and Ragen.

69.    On August 8 2022, the Individual Defendants caused Generac to file its quarterly financial report with the SEC for the period ended June 30, 2022 (the "2Q22 Report"). In the 2Q22 Report, the Company reported an increase in preexisting warranty reserves of approximately $5.6 million and left its product warranty obligations disclosure untouched. Pursuant to SOX, attached to the 2Q22 Report were certifications certifying that the financial statements and other financial information included in the report fairly present, in all material respects, the financial condition, results of operations and cash flows of the Company for the second quarter of 2022. These certifications were signed by defendants Jagdfeld and Ragen.

70.    The above statements and financial information provided by the Company were materially misleading because they failed to disclose that: (i) SnapRS units were defective and prone to overheating, resulting in house fires; (ii) Generac failed to implement effective solutions for the defective SnapRS units; (iii) the Company's accrued warranty liabilities did not reflect the expected financial costs related to the defective SnapRS units; (iv) Pink Energy accounted for significantly more than 6% of the Company's net sales; and (v) as a result of the foregoing, a

decline in Pink Energy's financial condition was reasonably likely to cause significant financial harm to the Company.

### D.    The Truth Slowly Begins to Emerge

71.    On August 1, 2022, Pink Energy filed a complaint against Generac (the Pink Energy Lawsuit) for concealing the SnapRS defects from Pink Energy and failing to develop a suitable alternative to the defective units.  These defects allegedly resulted in contract cancellations and increased expenses for service calls, which cost Pink Energy $155 million loss in revenue.  Pink Energy faced 30,000 customer complaint calls per month and was forced to replace 50,000 units.

72.    These damages gave rise to liability that gravely threatened Pink Energy's operations as a going concern.  On October 7, 2022, Pink Energy was forced to declare Chapter 7 bankruptcy.

73.    On this news, the Company's stock price fell approximately 8.5% to close at $154.26 per share on October 7, 2022, on unusually heavy trading volume.

74.    In response to Pink Energy's bankruptcy announcement, a Generac spokesperson stated, "We are aware of Pink Energy's recent Chapter 7 bankruptcy filing. Over the past few weeks, we have already contracted with high-quality third-party providers to perform warranty services on Generac's products, now that Pink Energy will no longer be providing this service to its customers."   Additionally, the spokesperson deceptively downplayed Generac's role in the issues that contributed to Pink Energy's bankruptcy filing.  The spokesperson stated, in relevant part, the following:

> In certain situations, ***especially when product installation guidelines have not been followed***, as appears to be the case with some Pink Energy installations, customers may have experienced certain issues with a particular Generac component of their solar energy system – the SnapRS 801 or 801A. We have introduced a new next-generation rapid shutdown device, which has been designed and engineered to the highest reliability standards. We are committed to getting

those *upgrades* and warranty replacements taken care of as quickly as possible and those steps are well underway.

75.     Shortly following Pink Energy's bankruptcy declaration, on October 19, 2022, Generac issued a press release entitled "Generac Announces Preliminary Third Quarter 2022 Results." In that press release, Generac reduced its sales growth guidance range by approximately 40%, expecting 22-24% growth compared to prior expectations of 36-40% growth. Additionally, the Company reported, in relevant part, the following:

**Preliminary Third Quarter 2022 Results**

• Preliminary net sales increased 15% to approximately $1.09 billion during the third quarter of 2022 as compared to $943 million in the prior-year third quarter.

• *Preliminary net income attributable to the Company during the third quarter was approximately $58 million,* or $0.83 per share*, as compared to $132 million,* or $1.93 per share*, for the same period of 2021. The current year net income includes pre-tax charges totaling approximately $55 million, including approximately $37 million of clean energy product warranty-related matters and approximately $18 million of bad debt expense related to a clean energy product customer that has filed for bankruptcy*.

• *Preliminary adjusted net income attributable to the Company*, as defined in the accompanying reconciliation schedules, *was approximately $112 million*, or $1.75 per share, *during the third quarter as compared to $151 million*, or $2.35 per share, *for the same period of 2021*.

• Preliminary adjusted EBITDA before deducting for noncontrolling interests, as defined in the accompanying reconciliation schedules, was approximately $184 million, or approximately 17% of net sales, during the third quarter as compared to $209 million, or 22% of net sales, for the same period of 2021.

76.     On this news, the Company's stock price fell approximately 25% to close at $110.30 per share on October 19, 2022, on unusually heavy trading volume.

77.     On November 2, 2022, Generac released its third quarter earnings and held a related earnings call with investors and analysts. During the earnings call, defendant Jagdfeld stated that Generac now expects "the combination of clean energy technology products and services to deliver

sales between $300 million to $330 million for the full-year 2022, as compared to our previous guidance of approximately $500 million."

78.     Defendant Jagdfeld attributed the approximately 40% reduction in sales guidance for Generac's solar energy business to "the loss of a major customer [i.e., Pink Energy] during the quarter, along with the specific warranty-related issue [i.e., the defective SnapRS units]."

79.     When asked for clarification by a research analyst for J.P. Morgan on the catalyst of the revenue outlook reduction for the rest of the year, defendant Jagdfeld reiterated that "the **_majority_** of the market is **_related to the loss of the customer_**."  He expressed that "[i]t was a really important customer for us and the diversification of our customer base is going to be the primary focus here going forward."

80.     On this news, the Company's stock price fell approximately 8% to close at $105.70 per share on November 2, 2022, on unusually heavy trading volume.

## VI.    DAMAGES TO THE COMPANY

81.     As a direct and proximate result of the Individual Defendants' conduct, Generac has been seriously harmed and will continue to be.  Such harm includes, but is not limited to the following:

(a)     Any funds paid to settle the Securities Class Action;

(b)     Any funds paid to settle the Pink Energy Lawsuit;

(c)     Costs of replacing and updating damaged components;

(d)     Loss of customers and market share; and

(e)     Costs incurred from compensation and benefits paid to the defendants who have breached their duties to Generac.

82.     In addition, Generac's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired.  The Company still has not fully admitted

the nature of its false statements and the true condition of its business. The credibility and motives of management are now in serious doubt.

83. The actions complained of herein have irreparably damaged Generac's corporate image and goodwill. For at least the foreseeable future, Generac will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Generac's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII.  DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

84. Plaintiffs bring this action derivatively in the right and for the benefit of Generac to redress injuries suffered, and to be suffered, by Generac as a direct result of the wrongdoing alleged herein. Generac is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

85. Plaintiffs will adequately and fairly represent the interests of Generac in enforcing and prosecuting its rights.

86. Plaintiffs have continuously been shareholders of Generac at times relevant to the wrongdoing complained of and are current Generac shareholders.

87. When this action was filed, Generac's Board of Directors consisted of defendants Jagdfeld, Avedon, Bowlin, Dixon, Jenkins, Lampereur, Morgan, Nguyen, Ramon, Roedel, and Zarcone. Plaintiffs did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below. A majority of these defendants face a substantial risk of liability for, individually and collectively, violating and breaching their fiduciary duties of candor, good faith, and loyalty to Generac stockholders.

88. Defendant Jagdfeld is Generac's CEO and therefore is not independent under NASDAQ listing rules. As an employee, Jagdfeld derives substantially all of his income from his

employment with the Company. Therefore, he could not disinterestedly consider a demand for an action that may require him to sue the directors that control his continued employment and/or his fellow members of management with whom he works on a day-to-day basis. He is also named as a defendant in the Securities Class Action. As a result, demand is futile as to him.

89.     Defendants Ramon, Lampereur, Dixon, Roedel, and Zarcone have served on the Audit Committee at relevant times. As such, they are responsible for the integrity of Generac's disclosures. In their capacities as Audit Committee members, Ramon, Lampereur, Dixon, Roedel, and Zarcone reviewed and approved the materially misleading statements and allowed them to be disseminated in Generac's SEC filings and other disclosures. Specifically, these directors are responsible for assessing legal and financial risk exposures. Residential products like PWRcells accounted for a substantial portion of the Company's revenue, and the Company relied significantly on sales through one of its channel partners, Pink Energy. As alleged herein, Generac was on notice of the defective SnapRS units no later than April 2021, thus the Audit Committee knew or should have known that a product defect posed a significant financial risk but failed to disclose the same and understated the Company's warranty liabilities. Thus, Ramon, Lampereur, Dixon, Roedel, and Zarcone breached their fiduciary duties and are not disinterested, and demand is excused as to them.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

90.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

91.     The Individual Defendants each owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Generac's business and affairs, particularly with respect to issues as fundamental as public disclosures.

92.     The conduct by the Individual Defendants set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of the Company.

93.     In breach of their fiduciary duties owed to Generac, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

94.     In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report Company's overall prospects.

95.     As a direct and proximate result of the breaches of their fiduciary obligations by the Individual Defendants, Generac has sustained and continues to sustain significant damages, including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets. As a result of the misconduct alleged herein, defendants are liable to the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of Generac, demands judgment as follows:

A.      Declaring that Plaintiffs may maintain this action on behalf of Generac and that each Plaintiff is an adequate representative of the Company;

B.      Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties and violations of federal securities laws;

C.      Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Generac;

D.      Directing Generac to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Generac and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.      a proposal to strengthen the Company's controls over financial reporting;

2.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

3.      a proposal to strengthen Generac's oversight of its disclosure procedures;

4.      a provision to control insider transactions; and

5.      a provision to permit the stockholders of Generac to nominate at least three candidates for election to the Board.

E.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that Plaintiffs on behalf of Generac have an effective remedy;

F.      Awarding to Plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

G.      Granting such other and further relief as the Court deems just and proper.

### JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury.

Dated: March 6, 2023

By:   /s/Benjamin I. Sachs-Michaels

**GLANCY PRONGAY & MURRAY LLP**
Benjamin I. Sachs-Michaels
745 Fifth Avenue, Fifth Floor
New York, New York 10151
Telephone: (212) 935-7400
E-mail: bsachsmichaels@glancylaw.com

-and-

Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: rprongay@glancylaw.com
        prajesh@glancylaw.com

*Counsel for Plaintiffs*

DocuSign Envelope ID: 9A77629F-CAE7-42D8-9041-9A8B3A14BA99

## **VERIFICATION**

I, Karen Bento, do hereby verify that I am a holder of stock of Generac Holdings Inc., and was a holder of such stock at the time of the wrongs complained of in the foregoing Verified Shareholder Derivative Complaint ("Complaint"). I have authorized the filing of the Complaint. I have reviewed the Complaint. All of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge and, with respect to the remainder of the averments, are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date: _2/27/2023_____

_Karen Bento_____
Karen Bento

## <u>VERIFICATION</u>

I, Barbara Sterbcow, do hereby verify that I am a holder of stock of Generac Holdings Inc., and was a holder of such stock at the time of the wrongs complained of in the foregoing Verified Shareholder Derivative Complaint ("Complaint"). I have authorized the filing of the Complaint. I have reviewed the Complaint. All of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge and, with respect to the remainder of the averments, are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 2/28/2023

_Barbara Sterbcow_
Barbara Sterbcow